**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____
                                                    )
**JOYCE M. TOVAR,**                           )
                                                    )
      **Plaintiff,**                          )
                                                    )
      **v.**                                     )     **CIVIL NO. 3:09CV100**
                                                    )
**MICHAEL J. ASTRUE,**                        )
**Commissioner of Social Security,**          )
                                                    )
      **Defendant.**                         )
_____)


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Joyce M. Tovar, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI").  The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 11) and motion to remand (docket no. 12) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 14) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on August 31, 2005, claiming disability due to pain in her legs, feet, and back, with an alleged onset date of September 28, 2005.  (R. at 82-86, 88-91, 135, 250-56.)  The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2]  (R. at 33-35, 38-39, 44-46, 51-53, 257-59.)  On April 4, 2007, accompanied by counsel, Plaintiff testified before an ALJ.  (R. at 266-301.)  On June 29, 2007, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where Plaintiff retained the residual functional capacity "to perform her past relevant work, either as actually performed or as generally performed in the national economy."  (R. at 21.)  The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.  (R. at 6-8.)

Plaintiff sought review in this Court, but at the Commissioner's request, the case was remanded for further administrative proceedings so that the ALJ could reevaluate the severity of Plaintiff's subjective complaints and obtain additional evidence of Plaintiff's alleged cardiac impairment.  (R. at 333.)  On remand, Plaintiff testified before the ALJ at a supplemental hearing held on July 15, 2008.  (R. at 407-52.)  On December 1, 2008, the ALJ again denied Plaintiff's application, finding that she still retained the residual functional capacity to perform her past

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

relevant work.  (R. at 313-24.)  Plaintiff now appeals that decision.

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence.  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'"  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589).  In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).  The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed.  Perales, 402 U.S. at 390.  While the standard is high, if the

ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits.  20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177.  The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3]  20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition.  Id.  If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c).  In order to qualify as a

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function.  20 C.F.R. § 404.1520(c).  At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past."  20 C.F.R. §§ 416.920(e), 404.1520(e).  If such work can be performed, then benefits will not be awarded.  Id.  However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The Commissioner can carry his

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved.  20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR-96-8p.  When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  Id.  (footnote omitted).

burden in the final step with the testimony of a VE.  When a VE is called to testify, the ALJ's

function is to pose hypothetical questions that accurately represent the claimant's RFC based on

all evidence on record and a fair description of all the claimant's impairments so that the VE can

offer testimony about any jobs existing in the national economy that the claimant can perform.

Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  Only when the hypothetical posed represents

*all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or

helpful."  Id.  If the ALJ finds that the claimant is not capable of SGA, then the claimant is found

to be disabled and is accordingly entitled to benefits.  20 C.F.R. §§ 416.920(f)(1),

404.1520(f)(1).

## IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset

of her disability.  (R. at 315)  At steps two and three, the ALJ found that Plaintiff had the severe

impairments of obesity, osteoarthritis of the knees, degenerative disk disease, and renal calculi,

but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P,

Appendix 1, as required for the award of benefits at that stage.  (R. at 315-16.)  The ALJ next

determined that Plaintiff had the RFC to perform a limited range of light work, including lifting

up to twenty pounds occasionally and ten pounds frequently, standing or walking a total of two

to three hours in an eight hour day and fifteen to twenty minutes at a time, with an unlimited

ability to sit.  (R. at 317.)  Additionally, the ALJ found that Plaintiff could perform postural

movements such as climbing ramps and stairs, balancing, kneeling, and stooping occasionally,

but that she could not climb ladders, ropes, or scaffolds, crawl, or squat.  (R. at 317.)  The ALJ

also concluded that the Plaintiff was precluded from exposure to workplace hazards, such as

moving machinery parts and unprotected heights.  (R. at 317.)

The ALJ then determined at step four of the analysis that Plaintiff could perform her past relevant work as a substitute teacher because such work did not require activities precluded by the Plaintiff's RFC.  (R. at 323.)  Because the ALJ determined that Plaintiff was capable of performing her past relevant work, it was unnecessary to pursue the analysis to step five in which the Commissioner would have had the burden to show that, considering the claimant's age, education, work experience, and RFC, the claimant was capable of performing other work that is available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(f); 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits.  (R. at 323.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings.  (Pl.'s Mot. for Summ. J.)  In support of her position, Plaintiff argues that the ALJ: (1) failed to follow the directions of the Appeals Council in considering Plaintiff's application on remand; (2) erred in discounting the opinions of Plaintiff's treating physicians; (3) applied the wrong legal standard in finding that Plaintiff could perform her past relevant work; and (4) erroneously determined that Plaintiff's kidney problems did not constitute a severe impairment.  (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 28-37.)  Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed.  (Def.'s Mot. for Summ. J. and Br. in Supp.

Thereof ("Def.'s Mem.") at 17-29.)

1.    **Plaintiff contends that the ALJ failed to follow the directions of the Appeals Council in considering Plaintiff's application on remand.**

The Appeals Council remanded Plaintiff's case to the ALJ with specific instructions to further evaluate Plaintiff's subjective complaints and to obtain records from a scheduled cardiac catheterization procedure in order to determine whether Plaintiff suffered from a severe cardiac impairment.  (R. at 402-03.)  Plaintiff contends that the ALJ failed to follow such instruction in reevaluating Plaintiff's application.  (Pl.'s Mem. at 29-31.)

**a. Reevaluation of Plaintiff's Subjective Complaints**

With respect to the ALJ's reevaluation of Plaintiff's subjective complaints, Plaintiff specifically contends that the ALJ failed to consider an MRI noted by the Appeals Council in its Order remanding the case.  (Pl.'s Mem. at 30.)  Plaintiff further argues that the ALJ insufficiently justified his prior conclusion regarding Plaintiff's subjective complaints by noting that Plaintiff had made statements that were inconsistent with other evidence in the record regarding the weight requirements for her former substitute teaching position and whether she had suffered a heart attack.  (Pl.'s Mem. 30-31.)  In essence, Plaintiff's argument is that the ALJ improperly discounted Plaintiff's credibility in determining her RFC.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.  In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis.  <u>Craig v. Charter</u>, 76 F.3d 585, 594 (4th Cir. 1996); <u>see</u> <u>also</u> SSR 96-

7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a).  The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms.  Id.; SSR 96-7p, at 1-3.  The ALJ must consider all the medical evidence in the record.  Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added).  If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work.  Craig, 76 F.3d at 595.  The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the individual's statements.  Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations.  See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997).  The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'"  Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)).  Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'"  Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled.  See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).  The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant."  Craig, 76 F.3d at 591.

At the second hearing before the ALJ, in support of her subjective complaints of pain and limitations as a result of her impairments, Plaintiff testified that she has sharp pain all of the time in her legs and feet and that the lower part of her back burns like "it's on fire."  (R. at 423.)  She stated that she was taking Hydrocodone[6] for her back and Lyrica[7] for her legs. (R. at 423, 25.) Plaintiff further testified that when she has pain in her legs, she elevates her feet to rest her legs. (R. at 426.)  She also asserted that she cannot stay on her feet for long periods.  (R. at 426.)  For example, she cannot walk the distance from the front of a store to the back without becoming tired, and she can stand at her sink for ten to fifteen minutes to wash dishes, but she keeps a stool by her stove to sit on while she is cooking.  (R. at 427-28.)  Plaintiff also testified that she gets cramps in her lower back as a result of kidney stones, which her doctor has not been able to remove because she does not have applicable insurance coverage.  (R. at 424.)  As a result, she has been instructed by her doctor to drink excessive amounts of water which causes her to relieve herself each hour.  (R. at 424-25.)  With respect to her heart problems, Plaintiff testified

---

[6] Hydrocodone is a semisynthetic opioid analgesic derived from codeine but having more powerful sedative and analgesic effects.  Dorland's Medical Dictionary (30th ed. 2003).

[7] Lyrica is a brand name for the generic pregabalin, manufactured by Pfizer, and is used to treat neuropathic pain associated with diabetic peripheral neuropathy.  Physicans' Desk Reference (2008 ed.).

10

that she sometimes feels "butterflies" in her chest for which she takes baby aspirin.  (R. at 427.)

In evaluating Plaintiff's subjective complaints, the ALJ performed the required Craig analysis and provided an explicit rationale to support his conclusions.  The ALJ found that the "claimant's medically determinable impairments could reasonably be expected to generally produce the alleged symptoms, but that the claimant's contentions concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible."  (R. at 321.)  Specifically, the ALJ explained that Plaintiff's limited treatment record (consisting of only thirty eight pages of treatment records (excluding the DDS and consultative examining medical expert reports and the limitations forms submitted by Plaintiff's counsel)) did not support Plaintiff's allegations regarding the severity of her limitations.  (R. at 321.)  The ALJ observed that Plaintiff's treatment was generally routine, conservative, unremarkable, and included time gaps, the ALJ specifically noting that Plaintiff had not been recommended for surgery, had not attended physical therapy,[8] and had not been referred to a pain management specialist.  (R. at 321.)  The ALJ additionally noted, in support of his credibility determination, that Plaintiff had made inconsistent statements and that several of her statements were contradicted by other evidence of record.  (R. at 321.)  In particular, he noted that Plaintiff made numerous inconsistent statements about the greatest weight she was required to lift as a substitute teacher, ranging from twenty to thirty, to one hundred pounds.  (R. at 321.)  She had also stated that her doctor had told her she had suffered a heart attack, but an MPI study included in the record indicated otherwise.  (R. at 321.)  The ALJ nonetheless gave Plaintiff's subjective complaints

---

[8] As will be discussed later herein, Plaintiff obtained a RFC evaluation from a physical therapist (Ellen Hudgins), but there are no treatment notes reflecting that Plaintiff received any physical therapy.

some deference inasmuch as he found that she was limited to performing light work, with limitations.  (R. at 317, 321.)

In addition to considering the Plaintiff's subjective complaints, the ALJ also considered the medical records and evidence presented at the hearing in making his RFC and credibility determinations.  The ALJ conducted a thorough review of Plaintiff's medical history, examining each alleged symptom and condition and the corresponding medical history.  (R. at 315-16, 321-323.)  Contrary to Plaintiff's assertion that the ALJ failed to consider the July 22, 2006 MRI, which was a basis for the Appeals Council's remand, the ALJ specifically noted the imaging study in his decision and entertained testimony about the MRI from Dr. Alexander, an independent medical expert who testified at Plaintiff's hearing.  (R. at 321, 436.)  Dr. Alexander opined that, in fact, the MRI did not show significant spinal stenosis at L4-5; nor did it demonstrate nerve root compression, though it did show a diffuse disk bulge and bilateral facet hypertrophy at L3-4, such evidence being inconsistent with the level of persistent pain Plaintiff described.  (R. at 321, 436.)  The ALJ also considered the testimony of Dr. Alexander that Plaintiff had osteoarthritis and would have age- and weight-related knee pain which the ALJ factored into his analysis of Plaintiff's RFC.  (R. at 322.)

It is clear that the evidence in the record supports the ALJ's determination that Plaintiff's testimony regarding the extent and limiting effects of her symptoms and pain was less than credible.  The record additionally indicates that the ALJ, despite his credibility determinations, nevertheless gave some deference to Plaintiff's subjective complaints and medical history by finding that she was limited to performing only light work with several limitations.  Accordingly, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility and

RFC determinations are based on substantial evidence in the record and application of the correct legal standard, and should not, therefore, be overturned.

**b. Reevaluation of Plaintiff's Cardiac Impairment**

With respect to the ALJ's reevaluation of whether Plaintiff suffered from a severe cardiac impairment, Plaintiff asserts that the ALJ never addressed whether he had obtained and reviewed the April or May 2007 cardiac catheterization report noted by the Appeals Council.  (Pl.'s Mem. at 7.)  Plaintiff also asserts that the ALJ failed to address whether the cardiac impairment was a severe impairment.  (Id.)

Contrary to Plaintiff's assertion, however, the ALJ did address the issue of the cardiac catheterization records, as he was instructed to do by the Appeals Council.  Specifically, the ALJ noted at the outset of his decision that Plaintiff's counsel indicated that he would produce records of the claimant's cardiac catheterization if those existed, but that no such records were ever produced.  (R. at 313.)  Despite the absence of such evidence, the ALJ nevertheless considered other evidence of possible cardiac impairment, namely, the evidence that was available at the time of the June 29, 2007 decision that included an EKG that revealed no acute ST-T changes, normal sinus rhythm, and no evidence of previous cardiovascular injury; and a dipyridamole stress tomographic myocardial perfusion imaging study that revealed normal right and left ventricular size, a small low/moderate grade anterior wall left ventricle myocardial perfusion defect without regional wall motion or thickening, a normal global cardiac systolic function, and left ventricle ejection fraction of greater than 70 percent.  (R. at 316, 16.)  He also considered the additional evidence of studies performed after the June 2007 decision, including an MPI study performed on January 19, 2007, and an MPI rest study performed on March 29,

2007.  (R. at 315-16.)  He noted that a comparison of the two studies indicated that Plaintiff's small anterior wall perfusion defect showed no evidence of reversibility and, therefore, it likely represented changes due to soft tissue attenuation.  (R. at 316.)  Based on such evidence, the ALJ concluded that Plaintiff did not suffer from a severe cardiac impairment.  (R. at 315-16.)  A review of the record demonstrates that the ALJ did not fail to address the additional evidence of cardiac injury; nor did he fail to consider whether Plaintiff suffered from a severe cardiac impairment.  The Court, accordingly, recommends a finding that the ALJ's conclusions regarding Plaintiff's severe impairments are based on substantial record evidence and application of the correct legal standard, and should not be overturned.

2.      **Plaintiff contends that the ALJ erred in discounting the opinions of Plaintiff's treating physicians**.

Plaintiff contends that the ALJ did not properly consider Plaintiff's treating physicians' opinions.  (Pl.'s Mem. at 31-33.)  More precisely, Plaintiff argues that the ALJ incorrectly disregarded the opinion of Plaintiff's physical therapist (Ellen Hudgins), adopted by Plaintiff's primary care physician (Dr. Ragonesi), that Plaintiff was limited to sedentary work, as well as the opinion of Dr. Hahesy-Calhoun, Dr. Ragonesi's successor, that Plaintiff was disabled.  (Pl.'s Mem. at 31-32.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered.  See 20 C.F.R. § 416.912(f).  When the record contains a number of different medical opinions,

14

including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

The ALJ considered the opinions of Drs. Hahesy-Calhoun and Ragonesi and therapist Hudgins, but rejected them for several reasons. (R. at 322-323.) The ALJ found the opinions of Dr. Hahesy-Calhoun, Dr. Ragonesi, and therapist Hudgins to be conclusory, unsupported by the longitudinal record with its limited physical findings and generally routine and conservative treatment, and based upon little more than the Plaintiff's reported symptoms and limitations, rather than objective findings and diagnostic test results. (R. at 322-23.) Specifically with respect to the opinion of Dr. Hahesy-Calhoun, the ALJ noted that Dr. Hahesy-Calhoun had opined on the issue of whether Plaintiff was disabled, which is an issue reserved for the

15

Commissioner.  (R. at 322.)  The ALJ also noted that Dr. Hahesy-Calhoun only commenced treatment of Plaintiff on March 24, 2008, for routine follow-up and concluded Plaintiff was disabled the same day.  (R. at 322.)  Similarly, Dr. Ragonesi's treatment of Plaintiff was of limited frequency and duration.  (R. at 323.)  With respect to the opinion of therapist Hudgins, the ALJ observed the absence of treatment notes in the record indicating that Plaintiff ever received physical therapy or was otherwise treated by Hudgins.  (R. at 323.)

A review of the record demonstrates that the ALJ properly and thoroughly considered the medical opinions of Plaintiff's treating physicians.  (R. at 322-23.)  It was the medical records and doctor's reports from Plaintiff's own treating physicians that formed the basis of the ALJ's opinion that Plaintiff had the severe physical impairments of obesity, osteoarthrits of the knees, degenerative disk disease, and renal calculi.  (R. at 15-18, 315-16.)  However, as noted by the ALJ, each of the physicians treated Plaintiff with limited frequency and duration, and it is questionable whether therapist Hudgins ever treated Plaintiff at all.  The regulations provide that a treating physician's opinion is entitled to more or less weight depending, among other considerations, on the length of the treatment relationship and the frequency of the treatment.  20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i).  The limited frequency and duration of the treatment relationship between Plaintiff and her treating physicians and therapist was thus a proper reason to discount their respective opinions.  Moreover, to the extent Plaintiff argues that the ALJ failed to adopt her treating physicians' opinions as to specific work limitations, or whether she is disabled, her argument lacks merit.  As previously noted, the ALJ was not required to accept the treating physicians' opinions about the Plaintiff's ability to work because it is the responsibility of the ALJ to make that determination.  See 20 C.F.R. § 416.927(e)(1).

16

Finally, although it was not noted by the ALJ, a physical therapist is not an acceptable medical source to offer such an opinion.  See 20 C.F.R. §§ 404.1513 (a), (d)(1), 416.913(a), (d)(1). Finding that the ALJ analyzed the medical evidence of Plaintiff's impairments, and that he appropriately considered the opinions of Plaintiff's treating physicians, the Plaintiff's contention that the ALJ erred by not affording proper weight to Plaintiff's treating physicians is without merit.

**3.    Plaintiff asserts that the ALJ applied the wrong legal standard in finding that Plaintiff could perform her past relevant work.**

Plaintiff also argues that the ALJ applied the wrong legal standard in determining whether Plaintiff could perform her past relevant work as a substitute teacher.  (Pl.'s Br. at 33-35.)  Specifically, Plaintiff asserts that the ALJ asked the VE whether a person with the same limitations as the Plaintiff could perform the job of substitute teacher as "generally performed," but that he did not ask whether such a person could perform the job of substitute teacher as the job had been actually performed by the Plaintiff.  (R. at 34.)  Plaintiff explains that, although the job of substitute teacher is generally performed at the light level of exertion, and that it requires lifting twenty pounds occasionally, Plaintiff actually performed it at a medium level of exertion and had to carry up to thirty pounds occasionally.  (R. at 34.)

Plaintiff's argument misstates the inquiry at step four of the sequential analysis.  At step four, a claimant must show an inability to perform the kind of work performed in the past, and not simply a specific prior position.  DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir.1983); see also SSR 82-61.  In the fourth step, "a claimant will be found 'not disabled' if [she] is capable of performing [her] past relevant work either as [she] performed it in the past or as it is generally required by employers in the national economy."  Pass v. Chater, 65 F.3d.1200, 1205

(4th Cir. 1995) (emphasis in original; citing <u>Martin v. Sullivan</u>, 901 F.2d 650, 653 (8th Cir. 1990), for the statement that "The two tests [in SSR 82-61] are clearly meant to be disjunctive. If the claimant is found to satisfy either test, then a finding of not disabled is appropriate."). When the ALJ analyzes past relevant work as it is performed in the national economy, the Commissioner is entitled to rely on the exertional categories found in the The Dictionary of Occupational Titles (DOT). <u>DeLoatche</u>, 715 F.2d at 151; <u>Pass</u>, 65 F.3d.at 1205 (4th Cir. 1995). Even if the ALJ did fail to make a finding that a person with Plaintiff's RFC could perform Plaintiff's past relevant work as actually performed, and based his decision solely on such a person's ability to perform Plaintiff's past relevant work as generally performed in the national economy, such an error would be harmless because the tests are disjunctive and a claimant is determined not to be disabled under either measure.

Nonetheless, the ALJ did, in fact, consider whether Plaintiff could perform her past relevant work as actually performed by Plaintiff, or as generally performed. At the second hearing, the ALJ and the VE discussed the differences between the way Plaintiff's past relevant work as a waitress, cashier, and substitute teacher are generally performed in the national economy, and the way Plaintiff asserts that she performed those positions. (R. at 444-46.) Specifically, with regard to substitute teaching, the VE observed that Plaintiff stated that she lifted up to thirty pounds, and such lifting was slightly heavier than would ordinarily be expected at the light level. (R. at 444.) The ALJ asked the VE whether a person with Plaintiff's RFC could perform her "past work as actually performed." (R. at 445.) While the VE's response is somewhat ambiguous and unclear as recorded in the transcript of the hearing, it appears that the VE responded that a person with Plaintiff's RFC could not perform Plaintiff's past relevant work

18

as a cashier or waitress as she actually performed those jobs, but that such a person could perform Plaintiff's past relevant work as a substitute teacher as she actually performed that job. (R. at 445-46.)  The ALJ then asked the VE whether a person with Plaintiff's RFC could perform Plaintiff's past relevant work as generally performed, and the VE responded that such a person could perform Plaintiff's past relevant work as a substitute teacher, but not as a cashier or waitress, as those jobs are generally performed.  (R. at 446.)

The ALJ considered the VE's testimony in his decision, noting that the VE "identified claimant's past relevant work as a substitute teacher as light, skilled work, which was consistent with its description in the Dictionary of Occupational Titles, but the claimant actually performed the work as semiskilled at the medium exertional level, according to her testimony."  (R. at 323.) Based upon the VE's testimony, the ALJ concluded that Plaintiff could return to her past relevant work as a substitute teacher as generally performed in the national economy, and as previously performed by her.  (R. at 323.)  The ALJ thus applied the correct legal standard by at least concluding that Plaintiff could perform her past relevant work as a substitute teacher as generally performed in the national economy.  The Court therefore recommends a finding that the ALJ's conclusions regarding Plaintiff's ability to perform her past relevant work as a substitute teacher are supported by substantial evidence in the record and application of the correct legal standard.

4.      **Plaintiff argues that the ALJ erroneously determined that Plaintiff's kidney problems were not a severe impairment.**

Plaintiff asserts that the ALJ erroneously failed to find Plaintiff's kidney problems to be a severe impairment and to include the side effects of the treatment for her kidney stones, namely, frequent urination, in the hypothetical posed to the VE.  (Pl.'s Mem. at 35-36.)  In support of her

argument, Plaintiff relies on her own hearing testimony that she must relieve herself once or twice per hour and the testimony of the VE that an employer would consider hourly bathroom use to be excessive.  (Pl.'s Mem. at 35-36.)

Contrary to Plaintiff's assertion that the ALJ found Plaintiff's kidney stones not to be a severe impairment, in fact, the ALJ found that Plaintiff's severe impairments included renal calculi, or kidney stones.  (R. at 315.)  The ALJ did, however, discredit Plaintiff's testimony that she would need to relieve herself once or twice every hour.  (R. at 322.)  There is no medical evidence to support such a subjective complaint, and the medical expert (Dr. Alexander) testified at the hearing that a sufficient hydration regimen would only require urination every couple of hours and would be controllable.  (R. at 441, 450.)  Moreover, when questioned by Plaintiff's counsel at the hearing regarding Plaintiff's need to urinate frequently, the VE testified that plaintiff's past work as a substitute teacher would allow her to relieve herself every two hours and would also provide five to ten minute breaks between classes that would provide additional opportunity to use a restroom.  (R. at 447-48.)  Inasmuch as the ALJ did consider Plaintiff's kidney stones to be a severe impairment, but properly discounted Plaintiff's credibility regarding the frequency with which she must relieve herself where such frequency is unsupported by, and contradicted by, the medical evidence of record, Plaintiff's argument lacks merit.

## V.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 11) and motion to remand (docket no. 12) be DENIED; that Defendant's motion for summary judgment (docket no. 14) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date:_ November 3, 2009_
Richmond, Virginia